FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 JUN -7 P 4: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

Evgeny Okmyansky,
                    Plaintiff,

v.

Herbalife International of
America, Inc.,
                    Defendant

Civil Action No. 03- 10574-JLT

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
PARTIAL MOTION FOR SUMMARY JUDGMENT**

**A.      Factual and Procedural Background.**

The factual recitation in the defendant's submissions in support of its motion for

partial summary judgment is rife with omissions.  In denying that it is substantially and

continually present in the Commonwealth of Massachusetts, that it and its employees

conduct business here all the time, and that the defense of this action here is no burden

upon it whatever, the defendant ignores a multitude of obvious and incontestable facts. It

omits from its presentation the tens of thousands of people it has recruited to sell its

products within the Commonwealth during the relevant time period, all under contracts

similar to the plaintiff's, and the three thousand *current* Herbalife distributors in

Massachusetts. *See* Response to the Defendant's Statement of Undisputed Facts and

Statement of Additional Undisputed Facts [1] (hereinafter "Plaintiff's Response"), ¶14-15.

It does not mention over fifteen million dollars in sales in Massachusetts in the last three

---

[1] For the sake of brevity, references are to the Plaintiff's Response, which in turn
contains citations to the deposition transcripts, affidavits and documents  produced by the
parties (attached to the accompanying Affidavit of Pavel Bespalko).

years, *Id.* at ¶16, its regular tax filings with the Massachusetts Department of Revenue, *Id.* at ¶13, or its dozens of sales and recruiting meetings and presentations within the State. *Id.* at ¶18. Two of its affiliates, both engaged in the promotion of the core business of the defendant, are registered to do business in Massachusetts. *Id.* at ¶11. The plaintiff resided for eight of the eleven years of his distributorship (prior to bringing this action) in Massachusetts, as the defendant well knew, and all of the defendant's communications with him regarding this dispute were addressed to him in Massachusetts. *Id.* at ¶17.

The defendant has submitted a declaration of one of its employees, and, indeed, one of its Rule 30(b)(6) designees, that she is phobic about flying, and that it would be a hardship for her to travel to Massachusetts. *See* Declaration of Jackie Fisher, ¶5. This same witness testified at her deposition, however, that she had, in prior years, traveled to *seven foreign countries* on the company's business. *See* Plaintiff's Response, ¶27, 28. More importantly, she testified that she had no personal knowledge of the facts at issue in the present dispute and is thus not an appropriate witness in any case. *Id.*  Her superior, who instructed her to communicate to the plaintiff the defendant's decision not to pay him his commissions, and presumably knows more than she does about that decision, has traveled (and continues to travel) all over the world on the company's business. Fisher Decl., ¶6;  Plaintiff's Response, ¶27-28.

Most of the records relevant to the substance of the present dispute are already in Massachusetts, in the plaintiff's counsel's possession, and others are within the defendant's sole possession, custody and control and available at the touch of a computer button. *See* Okmyansky Aff., ¶10; Plaintiff's Response, ¶30. Since the defendant has already acknowledged that the distributors were improperly diverted from the plaintiff's

organization, the only substantive issue in this case is whether, as a matter of contract law, the defendant is required to pay the plaintiff the past commissions attributable to the sales of the distributors who were diverted. There is, essentially, no need for testimony in this action. At most, there may be an accounting exercise, which in the present state of technology can be performed equally well at any place on earth where there is telephone and internet access.

**B.     Argument**

       1.     *The Plaintiff's Claims are Governed by the Statute of Limitations of the Forum State*

The defendant correctly states in its memorandum that since 1995, Massachusetts has followed the "functional approach" to the choice of law issues concerning application of its own or a foreign statute of limitations. *See New England Tel. & Tel. Co. v. Gourdeau Const. Co.,* 419 Mass. 658, 660, 664 (1995).   The functional test is simple: "...the forum state will apply its own statute of limitations permitting the claim, *unless* (a) maintenance of the claim would serve no substantial interests of the forum; *and* (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." *Id.* (Emphasis added.)   The test adopts the approach of *Restatement 2nd of Conflict of Laws,* §142, favoring application of the forum's statute of limitations "unless the exceptional circumstances of the case make such a result unreasonable." *Kahn v. Royal Ins. Co.,* 429 Mass. 572, 574 (1999).   The main consideration is "to protect both the parties and the local courts against prosecution of stale claims while nevertheless providing an adequate opportunity for plaintiffs to bring their actions." *Nierman v. Hyatt Corp.,* 59 Mass.App.Ct. 844, 848 (2003), citing  Restatement 2nd of Conflict of Laws, §142(f).

The test is to be applied in light of the fact that "Massachusetts has expressed a preference that contracts be enforceable within six years of the accrual of the cause of action." *See Gourdeau*, 419 Mass. at 663.   Stated affirmatively, a forum should apply its own statute of limitations permitting the claim if it "'...would advance a substantial forum interest and would not seriously impinge upon the interests of other states.'" *Nierman v. Hyatt Corp.*, ____ Mass ____, 2004 WL 1067510 (Mass., Apr. 8, 2004).   The claims in this case easily satisfy both prongs of the test.

> a.   Massachusetts Has a Substantial Interest in Resolving the Substantive Issues in the Case

The defendant summarily asserts that the claims here are of no interest to the forum state. *See* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, pp.7-9.   It notes that the plaintiff no longer resides in the state and that the defendant is a foreign corporation. *Id.*   There is, however, more to consider.

1.   At present, over three thousand (3,000) residents of the Commonwealth are engaged in selling the defendant's products and recruiting other individuals to sell them, all under contracts which are functionally identical to the plaintiff's. *See* Plaintiff's Response, ¶14-16.  The resolution of the issues raised by the plaintiff with respect to the meaning of his contract has significance for all of the other Massachusetts distributors.

2.   Over the relevant period of time, the defendant recruited over thirty thousand (30,000) residents of the Commonwealth to enter into similar distributorship contracts. *See* Plaintiff's Response, ¶14.

3.   In recent years, the defendant has sold seven to eight hundred thousand dollars worth of goods in Massachusetts *each month*, with total sales over

4

the last three years totaling some fifteen million ($15,000,000) dollars. *See* Plaintiff's Response, ¶13, 16.

4.     The defendant and its fully-owned subsidiaries and affiliates file yearly with the Department of Revenue and other state agencies. *Id.*

5.     The defendant regularly conducts training and promotional sessions within the forum state with the joint purpose of selling its products and recruiting participants in its multi-level marketing scheme. *See* Plaintiff's Response, ¶18.

6.     The plaintiff lived in Massachusetts for three-fourths of the duration (thus far) of his contract with the defendant. *Id.* at ¶17, 31.   Most, if not all, of the communications concerning the plaintiff's claims occurred while he was a resident of the state, and were sent to him in Massachusetts. The letter dated February 9, 1999, upon which the defendant relies as the final notice to the plaintiff that his claims had been rejected, was sent to him at his residence in Massachusetts. *See* Defendant's Memorandum, p. 13-14, 16; Plaintiff's Response, ¶17, 31.

On these facts, the forum state has every reason to allow the suit to go forward.

The only defense identified by the defendant for refusing to pay the plaintiff commissions due and owed him is that, as part of the contract, it has retained some kind of unrestricted discretion over paying commissions and dividends to its distributors. *See* Plaintiff's Response, ¶20, 29-30. It is of clear importance to the thousands of Herbalife distributors in the state, all working under similar contracts with the defendant, to

determine whether this is, in fact, true.  The case has serious ramifications for thousands

of people involved in generating millions of dollars of annual revenue for the defendant.

As a matter of law, the plaintiff's change of domicile is of no moment to

prosecution of this action.  *See, e.g,. In re Bent*, 93 B.R. 329 (Bkrptcy.D.Vt. 1998) (post-

commencement change of domicile is not a factor *per se*).  The plaintiff without

objection attended his deposition in Boston and has every intention of complying with his

discovery and other obligations concerning the case.  As a factual matter, the plaintiff

left Massachusetts approximately three weeks prior to commencement of this action, after

residing in the state for over eight of the 11 previous years of his relationship with the

defendant.  *See* Plaintiff's Response, ¶17, 31.  His son, who actively participated in

communicating with the defendant concerning the subject of the claims, who is still

operating under a separate contract with the defendant, and who was the additional

addressee on the letter of February 9, 1999, is still a resident of the state.  *See*

accompanying Affidavit of Pavel Bespalko, Ex. A, Transcript of Deposition of Evgeny

Okmyansky, p. 111-112, Ex. 19.  *The plaintiff's injury and the defendant's breach*

*occurred in Massachusetts.  Id.*  Application of Massachusetts law will be in accord with

the principle (adopted implicitly in *Gourdeau*, 419 Mass. at 660-661) that it is the forum

where the injury occurred that has the most significant interest in applying its law and

that its policies should be given preference.  *Alves v. Siegel's Broadway Auto Parts, Inc.,*

710 F.Supp. 864, 868 (D.Mass.1989).

The case relied upon by the defendant, *Kahn v. Royal Insurance Company*, 429 Mass.

572, is inapposite.  "The claim involves an insured under a Florida insurance policy

issued in Florida by a Florida producer [on a North Carolina insurance company] to a

Florida motor vehicle owner, covering a vehicle bearing Florida plates and operated by a vice-president of the Florida insured. Massachusetts would have a substantial interest in the timeliness of an action to enforce rights under a Massachusetts vehicle insurance policy." 429 Mass. at 575. The action there did not stem from the accident, which took place in Massachusetts, but was a suit on the policy.

This is dramatically different from the present case, where the defendant has ample presence within the state, thousands of people in Massachusetts work for it and actively recruit others for the same purpose, the defendant derives millions of dollars of revenue within the state and the plaintiff resided here both when he raised his claim with the defendant and when the defendant committed its breach of contract (which it communicated to the plaintiff in Massachusetts). The first prong of the test is satisfied.

Because the plaintiff is able to demonstrate that Massachusetts has a significant interest in allowing the case to go forward, it is, as a matter of law, unnecessary to consider the second prong of the test (i.e., whether the case would be barred by the law of the state with the most significant interest). *Nierman v. Hyatt Corp.*, 59 Mass.App.Ct. 844, 846 (2003), *rev'd on other grounds.* However, lest the defendant's massive (if misguided) effort be thought wasted, the plaintiff will demonstrate that California law either does not apply or that it would not preclude his claim.

   b. <u>California Law Does Not Apply</u>

The defendant again correctly states that the "focus should be on which State has the most significant relationship to the occurrence and the parties." *Newburyport Five Cents Savings Bank v. McDonald,* 48 Mass.App.Ct. 904, 905 (1999). And, indeed, the factors to be considered include the place of contracting, the place of negotiation of

the contract, the place of performance, the location of the subject matter of the contract (usually in the context of land disputes), and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Restatement 2nd of Conflict of Laws*, §188(2). None of these factors favors California.

The place of contracting was Israel, with its seven-year statute of limitations. *See* Opinion of M. Baicz, Sankaran Decl., Ex. M. The contracting party was H.P.H. Products Ltd, an Israeli subsidiary of the defendant with a principal place of business in Petah-Tikva, Israel. *See* Sankaran Decl., Ex. C. The contract is written in Hebrew and contains no forum selection clause. *Id.* On the face of the documents, it appears, quite clearly, that it is to be governed by Israeli law, as the place of making the contract. Even the defendant admits that the contract was negotiated and executed in Israel. *See* Def's Memorandum, p. 9-10. Nothing in the documents points to California as the preferred forum for adjudication.

The place of performance of the contract is undefined. The plaintiff was and still is to carry out his contractual obligations in any of the countries—58 plus the U.S. of A.--where the defendant conducts business, which the defendant freely admits. *See* Bespalko Aff., Ex. F, (excerpts from the Defendant's SEC Statements). For over eight of the eleven years of their relationship, prior to commencing this action, the plaintiff resided in Massachusetts and carried out his contractual obligations *in Massachusetts*. *See* Plaintiff's Response, ¶17, 31. The plaintiff has never resided in California. His sales have been all over the world, and his distributors likewise. This factor favors application of Massachusetts law.

The domicile, residence, and incorporation factor does not lead to California either.  The plaintiff was domiciled in Massachusetts for most of the duration of the contract.  *See* Plaintiff's Response, ¶17, 31.  The contract signatory, H.P.H. Products Ltd of Petah-Tikva, Israel, was located in Israel until it ceased its existence there.  *See* Sankaran Decl., Ex. C;  Exhibit C to Bespalko Aff., Deposition Transcript of Vicky Tuchman, p. 44.  The defendant, Herbalife International of America, Inc., is now a Nevada corporation (formerly of California), and has fully-owned subsidiaries registered to do business virtually everywhere in the world, including Herbalife International Communications, Inc., registered to do business in Massachusetts.  *See* Sankaran Decl., Ex. A.  For all practical purposes, the defendant has admitted that there is no separation between Herbalife International, Inc., Herbalife International of America, Inc., and Herbalife International Communications, Inc. *See* Plaintiff's Response, ¶9-12.  They share corporate offices, officers, equipment, and purposes.  *Id.*  The plaintiff originally contracted with H.P.H. Products Ltd of Israel, then directed correspondence to Herbalife International, Inc., of California, and received responses from Herbalife International of America, Inc., currently a Nevada corporation.[2]  *See* Sankaran Aff., Decl. A, C; Plaintiff's Response, ¶17, 30, 31.  At all relevant times, Herbalife conducted and continues to conduct extensive business in the Commonwealth.  All of the Herbalife entities refer to themselves simply as Herbalife (*see* Bespalko Aff., Ex. F) without meaningful distinction, and they are present virtually everywhere.

---

[2] The defendant was incorporated in California, but chose to discontinue its corporate existence there and re-incorporated in the State of Nevada.  Presumably, it sought the benefit and protection of the laws of that state.  *See* Sankaran Decl., Ex. A.  Oddly enough, the Nevada statute of limitations for actions on breach of a written contract is six years, just as in Massachusetts.  Nev.Rev.Stat. 11.190.

Finally, a corporation of the defendant's size and ubiquity does not have a reasonable expectation that it would have the benefit of the laws of the state where it is headquartered (and not the one where it is incorporated or the place of contracting) traveling with it all over the United States, if not the world.  By the same token, "[i]n an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum." *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.,* 556 F.2d 975 (C.A.9, 1977)

In re-incorporating in Nevada, it presumably sought to avoid certain constraints of California law; yet it now seeks to apply the favorable California statute of limitations to its worldwide activities, including those in Massachusetts.  The defendant instructs its distributors in how its products are to be marketed in each state or country, does not sell certain products in certain markets and alters its marketing scheme in accordance with local regulations.  *See* Bespalko Aff., Ex. F.  No reason appears why it should not be subject to other provisions of local law.

c.     The Plaintiff's Claims Survive Even a Four-Year Statute of Limitations

A four-year statute of limitations would not bar the present action.  Under the familiar rule, whether under Massachusetts of California law, the statute of limitations begins to run at the time when a party knew or should have known that a breach occurred. *Intermedics, Inc. v. Ventritex, Inc.,* 822 F.Supp. 634, 640 (N.D.Cal.,1993); *Trustees of Screen Actors Guild-Producers Pension and Health Plans v. Meterna,* 70 F.Supp.2d 1082, 1086 (C.D.Cal.1999); *Germaine Music v. Universal Songs of Polygram,* 275 F.Supp.2d 1288, 1302 (D.Nev.,2003).

Assuming that Californian law governs, as a matter of that law, the time for breach in cases where a party fails to honor its contractual obligations is "at the time the [breaching party] fail[s] to respond to the … claim," and not the time of making of the claim. *See e.g. Herring v. Teradyne, Inc.,* 256 F.Supp.2d 1118, 1136 (S.D.Cal.,2002), citing *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994 (D.N.J.1988). Moreover, "[i]t is generally a question of fact as to whether reasonable diligence has been exercised in discovering a claim." *Bank of America Nat. Trust and Sav. Ass'n v. Allstate Ins. Co.,* 29 F.Supp.2d 1129, 1134 (C.D.Cal.,1998)(citations omitted). In the event there is any ambiguity in the statements that the moving party relies upon as unequivocally indicating a breach, the issue is for the trier of fact and the burden is on the party asserting the defense to prove it. *Id.*

Also, as a matter of Californian law, a party may be estopped from asserting a statute of limitations defense. *Id.*, citing *Prudential-LMI Comm. Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230, 1241 (Cal.1990). "Under the doctrine of equitable estoppel, if [a person] leads [another] to believe that an amicable settlement may be reached, thereby delaying suit, [he] will be estopped from asserting a defense based on the statute of limitations." *Id.*(citations omitted). [what were the facts in that case?] The burden is on the plaintiff to establish the elements, which are "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Id.*

The facts of the present case are these: at various points in 1994-1995, the plaintiff complained to the defendant that his distributors had been diverted. *See* Defendant's Statement of Undisputed Facts, ¶5. The defendant assured him that it would be conducting an investigation. *See* Plaintiff's Response, ¶21. Meanwhile, the plaintiff was operating under his contract with the defendant, receiving commissions and dividends with respect to other distributors. *See* Affidavit of Evgeny Okmyansky, ¶9. When it was discovered that *he* had inadvertently recruited people who "belonged" to other distributors, these people were returned to their originators *and* his account was debited accordingly. *See* Plaintiff's Response, ¶26.

At various times in 1998, the plaintiff received correspondence from the defendant which informed him that the cases were resolved in his favor, with the "lineage" being transferred to him. *See* Plaintiff's Response, ¶20, 29-30. The letters made no mention of monetary adjustments. When the plaintiff contacted the defendant, he was informed that a favorable decision would be forthcoming. *See* Plaintiff's Response, ¶21. Finally, on February 9, 1999, the defendant sent a letter *thanking the plaintiff for his patience*, and for the first time telling him that it was decided "for reasons known" to the plaintiff, that no moneys would be paid. *Id.* at ¶22. The plaintiff contends that he knows of no such reasons and the defendant has identified none so far. On March 19, 1999, the plaintiff sent a letter to the defendant questioning its decision and demanding an explanation. *See* Okmyansky Aff., ¶7; Bespalko Aff., Ex. A, Deposition Transcript of Evgeny Okmyansky, Ex. 20. No response was received. Meanwhile, the plaintiff was still performing under the contract, and still receiving his commissions and other dividends. *See* Okmyansky Aff., ¶6.

The plaintiff reasonably understood the letter of February 9, 1999, received after years of assurance that a favorable decision was about to be made, not as an unequivocal and unconditional breach of his continuing contract, but as yet another stage in an ongoing process. *Id.* at ¶7. It was, after all, the first indication that his entitlement to diverted commissions was an issue somehow separable from his entitlement to have the diverted distributors returned to his organization. He therefore sought clarification in his letter of March 19, and it was the lack of response to *that* letter that told him the defendant's position was indeed firm. *Id.* The present action was filed on February 26, 2003.[3]

In accordance with California law, viewing all the facts in the light most favorable to the non-moving party, and without regard to credibility determinations (*see Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir. 1997), an issue exists as to when the breach occurred and when the cause of action accrued. There further exists a triable issue as to whether the defendant is estopped from asserting the defense given its actions in misleading the plaintiff into believing that an amicable settlement would be forthcoming in an effort to discourage him from seeking legal relief. Taking the plaintiff's version of facts as true, as the Court must at this stage, the plaintiff's action would survive even a four-year limitation period.

---

[3] Even if the earlier letter were taken as operative, it did not arrive, plainly, until some time after February 9; and it would then have had to have been translated into Russian for the plaintiff to have understood it. It is hardly unlikely that this process could have taken until February 26.

*2.        Summary Judgment is Improper With Regard to the Substance of the Plaintiff's Claims*

The defendant urges the Court to grant it summary judgment as to the plaintiff's claims with respect to several individuals listed in his Rule 26f submission to the Court. The individuals listed fall into two categories: witnesses who were erroneously included into the list of persons who constitute the basis of claims[4]; and distributors as to whom the plaintiff stated that he did not know whether they do or do not constitute the basis of his claim. *See* Defendant's Memorandum, p. 4-6.

As to the witnesses mistakenly listed in the wrong section of the Rule 26f statement, since no claims are being asserted against them, there is nothing to adjudicate and no judgment can be entered for or against them. As to the persons whom the plaintiff testified he had no knowledge whether they do or do not constitute the basis of his claim, the defendant's motion is utterly premature. All of the records concerning the identities of the distributors, the volume of their sales, and the amount of the commissions payable, is within the sole possession, custody, and control of the defendant. *See* Okmyansky Aff., ¶10. No substantive discovery was conducted in this action pending resolution of the questions of the applicable statute of limitations and venue, both raised by the defendant. The defendant's motion as to these distributors is simply premature.

### Conclusion

For the reasons stated, the defendant's motion for summary judgment should be denied.

---

[4] The plaintiff readily confirmed during his deposition that he was not asserting claims as to these individuals.

14

By his attorneys,

Joel Z. Eigerman, BBO No. 152000
Pavel Bespalko, BBO No. 654315
50 Congress Street, Suite 200
Boston, MA 02109
617 367 0014

June 7, 2004

## CERTIFICATE OF SERVICE

I, Pavel Bespalko, hereby certify that I served the foregoing document upon the defendant by mailing the same via first-class mail, postage pre-paid, to its counsel Annapoorni Sankaran, Esq. of Greenberg & Traurig, at One International Place, Boston, MA 02110 this 7th day of June, 2004.

Pavel Bespalko