UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVGENY OKMYANSKY,<br>　　　Plaintiff,<br><br>v.<br><br>HERBALIFE INTERNATIONAL OF<br>AMERICA, INC.,<br>　　　Defendant. | Civil Action No. 03-10574-JLT |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HERBALIFE INTERNATIONAL OF AMERICA, INC. ON ISSUES SET FORTH IN THE JUNE 21, 2004 ORDER

Pursuant to this Court's June 21, 2004 Order (the "**Order**") and FED. R. CIV. P. 56(b), defendant Herbalife International of America, Inc. ("**Herbalife**"), hereby submits this memorandum of law in support of the Motion For Summary Judgment Of Defendant Herbalife International Of America, Inc. On Issues Set Forth In The June 21, 2004 Order ("**Defendant's Summary Judgment Motion**").[1] It is undisputed that the explicit terms of the contract between Plaintiff Evgeny Okmyansky ("**Okmyansky**" or "**Plaintiff**")) and Herbalife gave Herbalife sole and absolute discretion to resolve complaints regarding compensation in the case of Dual-distributorships, as defined below, and accordingly Okmyansky was never entitled to the payments which are the subject of his complaint.  Therefore, Herbalife is entitled to judgment as a matter of law.

---

[1] As Phase Two of discovery has not commenced pursuant to this Court's January 7, 2004 Order ("**Scheduling Order**") and as the motions filed pursuant to the Scheduling Order relating to Phase One issues have not yet been considered by the Court, Herbalife reserves all of its rights with respect to any and all other defenses not set forth in the Order, including but not limited to statute of limitations and venue, and reserves the right to assert such defenses and file any other motions based on other grounds at the appropriate time, including but not limited to after the close of Phase Two of discovery.  See Scheduling Order, Exhibit 1 to the Declaration of Annapoorni R. Sankaran (hereinafter "**Sankaran Declaration**") submitted contemporaneously herewith; Order, Exhibit 2 to Sankaran Declaration.

1

## STATEMENT OF UNDISPUTED FACTS RELEVANT TO ISSUE RAISED IN THE JUNE 21, 2004 ORDER ONLY

The undisputed facts relevant to this memorandum only, see footnote 1, supra, are as set forth in Defendant's Summary Judgment Motion pursuant to Local Rule 56.1, submitted contemporaneously herewith and, for the convenience of the Court, are as follows.[2]

### HERBALIFE

Herbalife is a Nevada Corporation with its headquarters located in Century City, California. See Exhibit 3 to Sankaran Declaration. Herbalife was founded in 1980 and develops and markets weight management products, nutritional food and dietary supplements, and personal care products to people in 50 states and 58 countries. Declaration of Jackie Fisher (hereinafter "Fisher Declaration") submitted contemporaneously herewith, ¶2. Herbalife sells its products through an international network of independent distributors who purchase products directly from Herbalife. Id. Herbalife operates through a multi-level marketing system through which the distributors can sell Herbalife products and derive revenue from products purchased by other "down-line" distributors he recruits. Id.

### NEGOTIATION OF THE PLAINTIFF'S CONTRACT

Okmyansky is a citizen of Russia and Israel. On or about July 21, 1992, Okmyansky signed a distributorship agreement to become a distributor of Herbalife products ("**Distributor Agreement**"). See Distributor Agreement and translation, Exhibit 4 to Sankaran Declaration. Okmyansky has worked as a full-time distributor of Herbalife products since 1992. Okmyansky Depo p. 16. Between 1992 and 1995, Okmyansky moved between Israel and Russia and in 1995, moved to Massachusetts. Okmyansky Depo p. 30. Okmyansky moved from Massachusetts to Canada in January 2003 and currently maintains residences in both Canada and

---

[2] Exhibits, deposition transcript excerpts and unreported cases referenced herein are attached to the Sankaran Declaration.

Russia.  Okmyansky Depo. pp. 9; 32.

### TERMS OF THE PLAINTIFF'S CONTRACT

In addition to the terms of the Distributor Agreement, Herbalife distributors, including Okmyansky, are compensated based on terms set forth in the Herbalife Career Book ("**Career Book**").  See Transcript of the Deposition of Jackie Fisher ("Fisher Depo.") pp. 39-41, Exhibit 6 to Sankaran Declaration.  The Career Book spells out the method by which distributors are to be compensated for sales of Herbalife products they make as well as those made by the down-line.  Id.; Career Book Exhibit 7 to Sankaran Declaration.  The amount of wholesale and retail profit a distributor earns as well as any royalties or commissions to be paid to a distributor depends on the "volume" earned by the distributor.  Exhibit 7 to Sankaran Declaration, pp. HERBALIFE 6156-61.  The volume any distributor earns is based, in part, on the manner in which product is ordered.  Exhibit 7 to Sankaran Declaration, pp. HERBALIFE 6156-57.

In addition to terms of compensation, the Career Book also contains a section entitled Rules of Conduct and Distributor Policies ("**Rules of Conduct**") which sets forth various rules, policies and procedures which govern the relationship between Herbalife and its distributors.  See Exhibit 8 to Sankaran Declaration; Rules of Conduct, Exhibit A to Amended Complaint and Jury Demand ("**Amended Complaint**"), Exhibit H to Sankaran Declaration.  Okmyansky received a Career Book at the time he executed his Distributor Agreement.  Okmyansky Depo. pp. 28-29; Amended Complaint ¶8.  Between 1994 and 1999, from time to time, the Career Manual has changed.  Fisher Depo. p. 41.

Pursuant to Rules of Conduct, Herbalife distributors are not permitted to be in the down-line of more than one sponsor ( "**Dual-distributorship**").

> An individual may have only one Herbalife Distributorship under one Sponsor.  A Distributor may only participate in the development of one Distributorship.  He is

not permitted to retail, recruit, promote, train, educate or otherwise assist in the development of the Herbalife business, for any Distributorship other than his own, except to assist his downline organization, as is appropriate for a Sponsor.

Rules of Conduct, Rule 4-A, Exhibit A to First Amended Complaint.[3]

According to the terms of the Rules of Conduct, Herbalife has absolute discretion in assessing any violations of the Rules of Conduct, including violations of the rule preventing Dual-distributorships. For example, the Introduction to the Rules of Conduct specifically states, "In its <u>sole and absolute discretion, Herbalife may impose any remedy or sanction it determines best addresses any breach of the Rules of Conduct & Distributor Policies</u>. Herbalife also reserves the right in its <u>absolute discretion</u> to waive wholly or partially or to pardon or forgive wholly or partially any breach of any of the rules contained in this section." Rules of Conduct, Introduction, Exhibit A to First Amended Complaint (emphasis added).[4]

The Rules of Conduct also provide,

> If Herbalife determines that an individual has signed an Application for Distributorship, or has worked or assisted in the development of another Distributorship as defined in these Rules of Conduct, while obligated to a prior distributorship, <u>Herbalife has sole and absolute discretion to determine the disposition of both Distributorships</u>, as well as any penalties or sanctions it deems necessary and appropriate for the Distributorship and Sponsoring Organization(s).

Rules of Conduct, Rule 4-C, Exhibit A to First Amended Complaint (emphasis added).[5]

Similarly, the Rules of Conduct state,

> Whenever there is a violation of the Herbalife Rules of Conduct and Distributor Policies and other rules and regulations and/or any procedures or directions issued by Herbalife, <u>Herbalife may in its sole discretion take whatever actions or</u>

---

[3] The Rules of Conduct as set forth herein are as they appear in the Rules of Conduct attached as "Exhibit A" to the Amended Complaint. Rule 4-A is identical in all versions of the Rules of Conduct from January 1997 through October 1999. See Exhibits 9-21 to Sankaran Declaration.

[4] The quoted portions of the introduction are identical to the versions of the Rules of Conduct in effect between March 1999 through October 1999. The quoted portion of the introduction was not present in the versions of the Rules of Conduct in effect between January 1994 through March 1999. However, the introductions to the Rules of Conduct in these versions did not contain contrary language. See Exhibits 9-21 to Sankaran Declaration.

[5] Rule 4-C is identical in all versions of the Rules of Conduct from January 1997 through October 1999. See Exhibits 9-21 to Sankaran Declaration.

> measures it determines necessary and appropriate, including but not limited to suspension of buying privileges, suspension of earnings, monetary fines or deletion or termination of the Distributorship.

Rules of Conduct, Rule 8-L, Exhibit A to First Amended Complaint (emphasis added).[6] Finally, in the Enforcement Procedures contained in the Rules of Conduct, in assessing complaints for violations of the Rules of Conduct, "[i]n its sole and absolute discretion, the Company [Herbalife] may impose any remedy or sanction it determines best addresses the issue." Rules of Conduct, Enforcement Procedure: Complaint Procedure (1)(G), Exhibit A to First Amended Complaint (emphasis added).[7]

### PLAINTIFF'S COMPLAINT

On or about February 24, 2003, Okmyansky filed his Complaint and Jury Demand ("**Complaint**") in the Middlesex Superior Court of the Commonwealth of Massachusetts. Okmyansky Depo. p. 32; Complaint Exhibit 22 to Sankaran Declaration. On or about March 24, 2003, Okmyansky filed his Amended Complaint in the Middlesex Superior Court. Amended Complaint. On or about March 28, 2003, Herbalife removed the action from the Middlesex Superior Court to this Court pursuant to 28 U.S.C. §1441. See Exhibit 23 to Sankaran Declaration. In his Amended Complaint, Okmyansky has asserted claims for breach of contract, quantum meruit, promissory estoppel, and implied contract arising out of certain commissions and bonuses which he claims are due to him based on certain individuals in his down-line who allegedly improperly entered into Dual-distributorships. Amended Complaint.

Specifically, Okmyansky alleges in his Amended Complaint that in or about 1994, he became aware that some of his down-line distributors were "enticed to sign separate and

---

[6] Rule 8-L is identical in all versions of the Rules of Conduct from January 1997 through October 1999. However, it appears as Rule 8-M in the versions of the Rules of Conduct in effect from January 1997 through June 1998. See Exhibits 9-21 to Sankaran Declaration.
[7] Enforcement Procedure G is identical in all versions of the Rules of Conduct from January 1997 through October 1999. See Exhibits 9-21 to Sankaran Declaration.

independent distributorship agreements by other persons" in contravention of the Rules of Conduct prohibiting Dual-distributorships. See Amended Complaint, ¶¶ 12-13, and Exhibit A thereto. Okmyansky also alleges that over the period of the next several years he learned that Herbalife paid commissions and other compensation that was allegedly due him with respect to the sales volume of these distributors and their organizations, to other sponsors. See Amended Complaint, ¶ 13. Okmyansky alleges that at various times between 1994 and 1999, he submitted complaints under the Rules of Conduct based on the alleged Dual Distributorships. Okmyansky Depo. pp. 81-111 and Exhibit 3 thereto. Herbalife conducted its investigation pursuant to its Rules of Conduct, see Exhibit A to Amended Complaint, and informed the Plaintiff of its decisions. Fisher Declaration, ¶5 and Exhibit 1 thereto.

In response to Okmyansky's repeated questions regarding Herbalife's prior final decisions, by letter dated February 9, 1999, Jackie Fisher ("**Fisher**"), Vice President of Distributor Policy Administration for Herbalife, again corresponded with Okmyansky and clearly and concisely summarized Herbalife's prior decisions with respect to the Plaintiff's claims of unpaid royalties and commissions. Okmyansky Depo. Exhibit 19; Fisher Declaration, ¶5 and Exhibit 1 thereto.

## PROCEDURAL ISSUES

In response to a joint motion filed by the parties, in the Scheduling Order of January 7, 2004, this Court ordered that discovery in this matter be bifurcated in two phases. Exhibit 1 to Sankaran Declaration. In Phase One, the parties were to conduct discovery on issues relating to venue, choice of law and statute of limitations. Id. In Phase Two, the parties are to conduct discovery on the merits of the case. Id. Between January 7, 2004 and May 14, 2004, the parties engaged in discovery on Phase One issues. On or about May 14, 2004, pursuant to the

Scheduling Order, Herbalife filed the Motion of Defendant Herbalife International of America, Inc., To Transfer Venue Pursuant to 28 U.S.C. § 1404(a), the Memorandum of Law In Support of Motion Of Defendant Herbalife International of America, Inc., To Transfer Venue Pursuant to 28 U.S.C. § 1404(a), the Motion for Summary Judgment of Defendant Herbalife International of America, Inc., the Memorandum of Law in Support of Motion for Summary Judgment of Defendant Herbalife International of America, Inc. ("**Herbalife's Summary Judgment Memo**"), Exhibit 24 to Sankaran Declaration, the Declaration of Jackie Fisher, and the Declaration of Annapoorni R. Sankaran (all collectively "**Herbalife's Phase One Motions**"). Exhibit W to Sankaran Declaration. In Herbalife's Summary Judgment Memo, Herbalife argued that California law applies to Okmyansky's contract. Herbalife's Summary Judgment Memo, pp. 6-13.

Also pursuant to the terms of the Scheduling Order, on or about June 7, 2004, Okmyansky filed Plaintiff's Opposition to Defendant's Motions for Summary Judgment and to Transfer Venue, Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("**Plaintiff's Venue Opposition**"), Exhibit 25 to Sankaran Declaration, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts, Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("**Plaintiff's Summary Judgment Opposition**") Exhibit 26 to Sankaran Declaration, the Affidavit of Evgeny Okmyansky, and the Affidavit of Pavel Bespalko (all collectively "**Okmyansky's Phase One Oppositions**").[8] Exhibit W to Sankaran Declaration. In Plaintiff's Venue Opposition, Okmyansky argued that he does not

---

[8] In response to the additional facts set forth in Okmyansky's Phase One Oppositions, on June 14, 2004, Herbalife filed the Response of Defendant Herbalife International of America, Inc., to Plaintiff's Statement of Additional Undisputed Facts and the Declaration of Joan Kardashian.

need any more discovery in this matter.  Plaintiff's Venue Opposition, p. 3 ("The only substantive issue in this lawsuit is the justification, if any, for the defendant's refusal to pay the plaintiff his commissions, dividends, and royalties with respect to these individuals.  It is a pure issue of law involving the interpretation of a written contract, and will require virtually no testimony or evidence other than documentary evidence already exchanged."), p. 8 ("The first issue involves the interpretation of a contract which, although it appears to consist of several different parts, is in writing.  Little if any testimony would appear necessary to resolve the question.").  In addition, in Plaintiff's Summary Judgment Opposition, Okmyansky argued that Massachusetts law applies to his contract with Herbalife.  Plaintiff's Summary Judgment Opposition. pp. 3-7.

At the hearing on Herbalife's Phase One Motions, this Court ordered that prior to considering Herbalife's Phase One Motions and prior to engaging in Phase Two of discovery pursuant to the Scheduling Order, the parties are to file cross-motions for summary judgment solely on the "contractual issue of whether Defendant had authority to refuse to pay Plaintiff the commissions and bonuses in issue."  Order, Exhibit B to Sankaran Declaration.

Pursuant to the Order, as it is undisputed that the Rules of Conduct provided Herbalife with sole and absolute discretion in resolving complaints of Dual-distributorships, Herbalife is entitled to judgment as a matter of law on all counts of the Amended Complaint.

**ARGUMENT**

**I. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF HERBALIFE ON ALL OF PLAINTIFF'S CLAIMS.**

**A. STANDARD FOR SUMMARY JUDGMENT.**

"Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  De-

JesusÕAdorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 841 (1st Cir. 1998).  In addition, "summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998).  Rule 56 of the Federal Rules of Civil Procedure authorizes a court to grant summary judgment.  Specifically, Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Further, Rule 56(e) provides:
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Camar Corp. v. Preston Trucking Co., Inc., 18 F.Supp.2d 112, 114 (D. Mass. 1998) (citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).  "The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Id.  "This burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 325 (1986).  "When the moving party has carried its burden . . . its opponent must do more than

9

simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The adverse party may not rest upon "mere allegations or denials," Fed. R. Civ. P. 56(e), but "must set forth specific facts showing that there is a genuine issue for trial." Id.

To defeat a properly supported motion for summary judgment, a factual issue must be both "genuine" and "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A factual issue is not "material" unless it "might affect the outcome of the suit under the governing law." Id. In deciding whether there is a genuine issue of material fact, the court must draw all reasonable inferences in favor of the nonmoving party. Id. at 255. However, the First Circuit has noted that "[a] genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking nor 'mere promise[s] to produce admissible evidence at trial'. . . nor conclusory responses unsupported by evidence . . . will serve to defeat a properly focused Rule 56 motion." Martinez v. New England Medical Center Hospitals, Inc., 307 F.Supp.2d 257, 264 (Tauro, J.) (D. Mass. 2004) citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Even drawing all inferences in favor of Okmyansky in this action, there is no genuine issue of material fact on Okmyansky's claims and the Court should grant summary judgment in Herbalife's favor.

    **B.**    **PURSUANT TO THE ORDER, DEFENDANT SHOULD BE AWARDED SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS AS HERBALIFE HAD AUTHORITY TO REFUSE TO PAY OKMYANSKY THE COMMISSIONS AND BONUSES AT ISSUE.**

    **1.**    **Law Governing Okmyansky's Contract.**

This Court need not decide what law applies to plaintiff's claims. Where the law is the same in the contemplated jurisdictions, a court need determine what law applies. "When a

choice-of-law question has been reduced to the point where nothing turns on more precise refinement, that should be the end of the matter." Fashion House, Inc. v. K Mart Corporation, 892 F.2d 1076 (1st Cir. 1989). See Royal Bus. Group, Inc. v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991); American Employers' Insurance Company v. Swiss Reinsurance America Corporation, 275 F.Supp.2d 29, 37 (D. Mass. 2003); Commercial Union Ins. Co. v. Swiss Reinsurance Am. Corp., 2003 WL 1786863, *7 n. 6 (D. Mass. 2003). In Herbalife's Summary Judgment Memo, Herbalife argued that California law applies to the contract which is the subject of Okmyansky's complaint.[9]  Herbalife's Summary Judgment Memo, pp. 6-13.  See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F.Supp.2d 115, 118, 120-22 (D. Mass. 2002); RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS, §6(2) and 188.  In Plaintiff's Summary Judgment Opposition, Okmyansky argues that Massachusetts law applies to his claims.  Plaintiff's Summary Judgment Opposition, pp. 3-7.  As the law governing the issue set forth in the Order is the same under California and Massachusetts law, this Court need not determine which law applies.

### 2. **Herbalife Properly Withheld The Commissions and Royalties At Issue.**

The law is clear that where a party specifically reserves the right to determine whether payments should be made under a contract in its sole and absolute discretion, it may exercise its discretion how it pleases.  We are fortunate in this case that the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), in an unreported case, applying California law had occasion to examine the law with respect an Herbalife contract virtually identical to Okmyansky's and similar factual situation.  Similar to Okmyansky's claims, in Miron v.

---

[9] If this Court determines that California and Massachusetts law do not produce the same result in this case, after engaging in the choice of law analysis, this Court should conclude that California law applies and that Herbalife is entitled to summary judgment as a matter of law on all claims of Plaintiff's Amended Complaint. For a complete discussion of the analysis of the choice of law applicable to Plaintiff's claims, Herbalife refers this Court to Herbalife's Summary Judgment Memo at pp. 6-13, Exhibit 24 to Sankaran Declaration.

Herbalife International of America, Inc., 11 Fed.Appx. 927, 2001 WL 564338 (9th Cir. 2001),[10] the Ninth Circuit reviewed the District Court's dismissal of claims brought by Herbalife distributors against Herbalife where the distributors claimed that Herbalife reassigned the plaintiffs' downline distributors and refused to pay royalties and bonuses on those reassigned distributors. Miron, 11 Fed.Appx. at 929, 2001 WL 564338 *1. The Court found that the District Court properly dismissed, *inter alia*, the claim for breach of contract and breach of the implied covenant of good faith and fair dealing.[11] Miron, 11 Fed.Appx. at 929, 2001 WL 564338 *1-2. The Court reasoned that there was no breach of contract or the implied covenant of good faith and fair dealing because "a party cannot be held liable for doing what is expressly permitted in an agreement or what is within the parties' reasonable expectations." Id. (emphasis added) (citing Carma Developers (California), Inc. v. Marathon Development California, 826 P.2d 710, 728, 6 Cal. Rptr. 2d 467, 486 (Ca. 1992)). Since Herbalife had the right to enforce the Rules of Conduct under the contract, the Court concluded that the plaintiffs "cannot claim that they did not reasonably expect that Herbalife reserved rights under the contract to unilaterally take actions against distributors." Id. Carma Developers, cited by the Ninth Circuit specifically holds:

> In the case of a discretionary power, it has been suggested . . . the party holding such power [may]. . . exercise it "for any purpose within the reasonable contemplation of the parties at the time of formation--to capture opportunities that were preserved upon entering the contract, interpreted objectively." (Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith* (1980) 94 Harv.L.Rev. at p. 373, fn. omitted.)

Carma Developers, 826 P.2d at 727, 6 Cal. Rptr.2d at 485 (emphasis added). The law in Massachusetts is the same. See Accusoft Corporation v. Palo, 237 F.3d 31, 45 (1st Cir. 2001)

---

[10] See Exhibit 28 to Sankaran Declaration.
[11] Okmyansky's Amended Complaint contains no count for breach of the covenant of good faith and fair dealing and contains not one allegation that Herbalife acted in bad faith.

12

("good-faith performance ultimately is circumscribed by the obligations . . . actually contained in the agreement"); <u>Dunkin' Donuts Incorporated v. Gav-Stra Donuts, Inc.</u>, 139 F.Supp.2d 147, 156 (D. Mass. 2001) ("the implied covenant of good faith cannot override the express terms of a contract"). Therefore, as long as the parties reasonably contemplated that in resolving complaints of Dual-distributorships Herbalife had discretionary authority before any payments of commissions or royalties could be made, there can be no finding, as a matter of law, in favor of the plaintiff.[12]

Herbalife's discretionary authority to resolve cases of Dual-distributorships is clearly spelled out in Okmyansky's contract, and therefore Herbalife is entitled to summary judgment on all counts of the Amended Complaint pursuant to the Order. It is undisputed that Herbalife has sole and absolute discretion to determine the resolution of Dual-distributorships. The Introduction to the Rules of Conduct specifically states, "In its <u>sole and absolute discretion, Herbalife may impose any remedy or sanction it determines best addresses any breach of the Rules of Conduct & Distributor Policies</u>. Herbalife also reserves the right in its <u>absolute discretion</u> to waive wholly or partially or to pardon or forgive wholly or partially any breach of any of the rules contained in this section." Rules of Conduct, Introduction, Exhibit A to <u>First Amended Complaint</u> (emphasis added).[13] The rules specifically relating dual distributorships unequivocally state

    If Herbalife determines that an individual has signed an Application for

---

[12] The facts in this case do not support a claim for breach of the covenant of good faith and fair dealing, which has not been alleged by the Plaintiff, as the record contains no evidence that Herbalife exercised discretion to achieve something not contemplated by the contract. <u>Piantes v. Pepperidge Farm, Incorporated</u>, 875 F.Supp. 929, 938 (D. Mass. 1995) (a party to a contract cannot exercise discretion to "recapture opportunities forgone on contracting as determined by the other party's reasonable expectations"); <u>Carma Developers</u>, 826 P.2d at 727, n. 11, 6 Cal. Rptr. 2d at 485 n. 11 (a party to a contract "holding the discretionary power [cannot use it] . . . to recapture opportunities forgone in contracting"). <u>See</u> Fisher Declaration ¶¶ 1-5 and Exhibit 1 thereto (Herbalife investigated Okmyansky's complaints pursuant to the Rules of Conduct and informed him of Herbalife's decision pursuant to the Rules of Conduct).

[13] <u>See</u> footnote 4, <u>supra.</u>

> Distributorship, or has worked or assisted in the development of another Distributorship as defined in these Rules of Conduct, while obligated to a prior distributorship, <u>Herbalife has sole and absolute discretion to determine the disposition of both Distributorships</u>, as well as any penalties or sanctions it deems necessary and appropriate for the Distributorship and Sponsoring Organization(s).

Rules of Conduct, Rule 4-C, Exhibit A to <u>First Amended Complaint</u> (emphasis added).[14]

Furthermore, the rules relating specifically to distributor conduct provide:

> Whenever there is a violation of the Herbalife Rules of Conduct and Distributor Policies and other rules and regulations and/or any procedures or directions issued by Herbalife, <u>Herbalife may in its sole discretion take whatever actions or measures it determines necessary and appropriate</u>, including but not limited to suspension of buying privileges, suspension of earnings, monetary fines or deletion or termination of the Distributorship.

Rules of Conduct, Rule 8-L, Exhibit A to <u>First Amended Complaint</u> (emphasis added).[15]  Finally, the Enforcement Procedures of the Rules of Conduct, state that in assessing complaints for violations of the Rules of Conduct, "<u>[i]n its sole and absolute discretion, the Company [Herbalife] may impose any remedy or sanction it determines best addresses the issue.</u>" Rules of Conduct, Enforcement Procedure: Complaint Procedure (1)(G), Exhibit A to <u>First Amended Complaint</u> (emphasis added).[16]  Based on these terms, there can be no doubt that Herbalife specifically reserved the right to exercise discretion in deciding whether to make payments of, *inter alia*, commissions and royalties when resolving a Dual-distributorship violation.  Indeed, based on this contract language, Herbalife's exercise of discretion in deciding to make such a payment is a condition precedent to the plaintiff receiving the payment.  <u>See</u> Rule 4-C; Complaint Procedure (1)(G), Exhibit A to <u>First Amended Complaint.</u>  There can be no argument that Okmyansky did not reasonably contemplate that Herbalife could exercise discretion in deciding whether to make a payment in assessing a Dual-distributorship Complaint.  <u>See</u> <u>Miron</u>,

---

[14] <u>See</u> footnote 5, <u>supra.</u>
[15] <u>See</u> footnote 6, <u>supra.</u>
[16] <u>See</u> footnote 7, <u>supra.</u>

11 Fed.Appx. at 929, 2001 WL 564338 *1-2 (where contract specifically provided that Herbalife had discretion to enforce Rules of Conduct, plaintiffs "cannot claim that they did not reasonably expect that Herbalife reserved rights under the contract to unilaterally take actions against distributors").

In viewing the plain language of the Rules of Conduct, which Okmyansky claims is the only necessary exercise for the resolution of his claim,[17] it is undeniable that Herbalife specifically contracted to have sole and absolute discretion in deciding whether to make payments in cases of Dual-distributorships. Prior to Okmyansky being entitled to receive a payment of royalties and commissions, Herbalife must first exercise its discretion and determine that payment should be made. It did not make that decision in Okmyansky's case. Okmyansky cannot now claim that he did not reasonably contemplate that payment could be withheld as the provisions of the contract are clear. See Rules of Conduct, Introduction, Rule 4-C, 8-L and Enforcement Procedures. This case stands on all fours with the unreported decision in Miron, and there is no reason to deviate from its reasoning here.[18] Under the circumstances, Herbalife was entitled to withhold the "royalties and commissions at issue" and accordingly, Herbalife is entitled to judgment as a matter of law on all claims in plaintiff's Amended Complaint.

---

[17] In Plaintiff's Venue Opposition, Okmyansky has stated that this case involves a simple issue of contract interpretation and that he needs no additional discovery on any issue. "The only substantive issue in this lawsuit is the justification, if any, for the defendant's refusal to pay the plaintiff his commissions, dividends, and royalties with respect to these individuals. It is a pure issue of law involving the interpretation of a written contract, and will require virtually no testimony or evidence other than documentary evidence already exchanged." Plaintiff's Venue Opposition, p. 3 (emphasis added). See also Plaintiff's Venue Opposition, p. 8 ("The first issue involves the interpretation of a contract which, although it appears to consist of several different parts, is in writing. Little if any testimony would appear necessary to resolve the question.").

[18] Indeed, in Miron, the Ninth Circuit upheld the dismissal of a complaint pursuant to FED. R. CIV. P. 12(b)(6). In this case, the plaintiff has had the benefit of Phase One discovery and has stated that he needs no additional discovery. The Ninth Circuit in Miron construed the same contract language as Okmyansky's contract in a factual situation virtually identical.

## **CONCLUSION**

Based on the foregoing and the terms of this Court's June 21, 2004 Order**,** Defendant Herbalife International of America, Inc., respectfully requests that this Court grant summary judgment on all claims asserted by Plaintiff Evgeny Okmyansky in his First Amended Complaint.[19]

                              **RESPECTFULLY SUBMITTED:**

                              HERBALIFE INTERNATIONAL OF AMERICA, INC.,
                              Defendant,
                              By its attorneys:

                              /s/ Annapoorni R. Sankaran
                              Gary R. Greenberg, BBO #209420
                              Annapoorni R. Sankaran, BBO #631065
                              Courtney B. Pillsbury, BBO #651549
                              GREENBERG TRAURIG, LLP
                              One International Place
                              Boston, MA  02110
                              (617) 310-6000

CERTIFICATE OF SERVICE

    I Annapoorni R. Sankaran, hereby certify that on July 12, 2004, I served a copy of the foregoing by hand upon: Joel Z. Eigerman, Esq., Pavel Bespalko, Esq., Law Officers of Joel Z. Eigerman, Esq., 50 Congress Street, Boston, MA  02109.

                              /s/ Annapoorni R. Sankaran
                              Annapoorni R. Sankaran

---

[19] See footnote 1.