# EXHIBIT 25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Evgeny Okmyansky,<br>　　　　Plaintiff,<br><br>v.<br><br>Herbalife International of<br>America, Inc.,<br>　　　　Defendant | Civil Action No. 03- 10574-JLT |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

Now comes the plaintiff and hereby submits the following memorandum in opposition to defendant's Motion to Transfer Venue. The plaintiff will rely upon and cross-reference in his opposition the parties' submissions on the defendant's Motion for Summary Judgment, including the Statement of Undisputed Facts, Plaintiff's Response to Defendant's Statement of Undisputed Facts and Statement of Additional Undisputed Facts ("Plaintiff's Response"); Declaration of Annapoorni Sankaran ("Sankaran Decl.") and exhibits thereto; Declaration of Jackie Fisher ("Fisher Decl."); Affidavit of Pavel Bespalko ("Bespalko Aff."), and exhibits thereto; and Affidavit of Evgeny Okmyansky ("Okmyansky Aff.").

### A. Factual and Procedural Background

Again, the defendant omits from its memorandum undisputed facts of significant importance to the disposition of this motion.

1.　　　　At present, over three thousand (3,000) residents of the Commonwealth are engaged in selling the defendant's products and recruiting other individuals

1

to sell them, all under contracts which are functionally identical to the plaintiff's. *See* Plaintiff's Response, ¶15. The resolution of the issues raised by the plaintiff with respect to the meaning of his contract has significance for all of the other Massachusetts distributors.

2.     Over the relevant period of time, the defendant recruited over thirty thousand (30,000) residents of the Commonwealth to enter into similar distributorship contracts. *See* Plaintiff's Response, ¶14.

3.     In the past three years, the defendant has derived over fifteen million ($15,000,000) dollars of revenue from its sales within the state. *See* Plaintiff's Response, ¶16.

4.     The defendant and its fully-owned subsidiaries and affiliates file yearly with the Department of Revenue and other state agencies. *See* Plaintiff's Response, ¶10, 13, 18.

5.     The defendant regularly conducts training and promotional sessions within the forum state with the joint purpose of selling its products and recruiting participants in its multi-level marketing scheme. *See* Plaintiff's Response, ¶18.

6.     The plaintiff lived in Massachusetts for three-fourths of the duration of his contract with the defendant. *See* Plaintiff's Response, 17, 31.   Most, if not all of the communications concerning the plaintiff's claims occurred while he was a resident of the state, and were sent to him in Massachusetts. *Id.* So, too, was the letter of February 9, 1999, which the defendant characterizes as the final notice to him that his claim was denied. . *See*

2

Okmyansky Aff., ¶7; Plaintiff's Response, ¶17, 22.  The plaintiff left

Massachusetts approximately three weeks before the suit was filed here.  *Id.*

7.     The defendant has admitted and re-confirmed that all of the improperly

diverted distributors, who constitute the main point of contention in this suit,

including Valentina Borisova, Mikhail Archavsky, Svetlana Mirgorodskaya,

Valery Novorussov, Michail Gorbatov, and several others, and their

organizations, indeed belong to the plaintiff.  *See* Plaintiff's Response, ¶20,

29.  The only substantive issue in this lawsuit is the justification, if any, for

the defendant's refusal to pay the plaintiff his commissions, dividends, and

royalties with respect to these individuals.  It is a pure issue of law involving

the interpretation of a written contract, and will require virtually no

testimony or evidence other than documents already exchanged.

8.     To date, the defendant has identified no substantive defense to the

underlying action, other than to assert that the contract implicitly gives it a

discretionary and unrestricted power with respect to payments on account of

the diverted distributors.  *See* Plaintiff's Response, ¶20, 29-30.

9.     While the defendant suggests that one of its proposed witnesses has a phobia

about flying to testify in Massachusetts (Fisher Decl., ¶5) that individual,

who identified seven foreign countries to which she had previously traveled

on the defendant's business (Fisher Depo., p. 96-97, Bespalko Aff., Ex. B),

testified at her deposition that she had no personal knowledge of the facts in

this case and has no relevant testimony to offer. (Plaintiff's Response, ¶28).

Her superior, one of the defendant's senior managers and the person who

made the decision not to pay the plaintiff, travels constantly and extensively on the defendant's business all over the world. *See* Plaintiff's Response, ¶27-28.

10.     All of the information concerning the mathematical aspect of the plaintiff's claims, i.e., the sales volumes of the diverted distributors and their organizations, rests within the defendant's exclusive custody, within its computer system, and is readily available at the touch of a button. *See* Okmyansky Aff., ¶10; Plaintiff's Response, ¶30.

It is in the light of these facts, coupled with the defendant's global presence, its billions of dollars in annual revenue, and its sophisticated accounting and record-management systems (*see* Excerpts of the defendant's latest SEC Statement reflecting this information, true and accurate copies attached to Bespalko Aff. as Ex.F), that the present motion must be considered.

**2.          Argument.**

The defendant's legal analysis is no more balanced than its factual recitation. As a preliminary matter, "[a] threshold requirement for any motion to transfer is that movant go beyond conclusory allegations." *Dayton Power and Light Co. v. East Kentucky Power Co-op., Inc.*, 497 F.Supp. 553 (D.C.Ky., 1980), citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145 (10th Cir. 1967). The factors to be considered, include "(1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the

interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Id.,* citing *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967).

The statute is not designed for "use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack,* 376 US 612, 633-634 (1964).  As a matter of law, the defendant has a "heavy burden" of "making a strong case" and a "convincing showing" for transfer.  *See Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 436 F.Supp. 444 (452 F.Supp.573) (D.C.Okl.1976); *Polychrome Corp. v. Minnesota Min. & Mfg. Co.,* 259 F.Supp. 330 (SDNY 1966); *Southern Investors II v. Commuter Aircraft Corp.,* 520 F.Supp.212 (D.C.La.1981); *also Bodine's , Inc. v. Sunny-O, Inc.*494 F.Supp. 1279 (D.C.Ill.1980); *also McKinney v. Souther Pac. Co.,* 147 F.Supp. 954 (D.C.Tex.1957).  "A transfer which would simply shift the inconvenience from one side to another should not be granted." *Van Dusen v. Barrack,* 376 U.S. 612 (1964); *Quinn v. Bowmar Pub. Co.,* 445 F.Supp. 780 (D.Md.1978).

In addition, "a party ha[s] to do more than forum shop to justify invoking forum non conveniens; the choice of forum must have been made 'with some harassment' in mind to have justified dismissal of the action." *Cheesman v. Carey,* 485 F.Supp. 203, 215 (D.C.N.Y.1980), quoting from the seminal *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947).  Normally, a plaintiff's choice of forum is given great weight and deference.  *See e.g. Sypert v. Bendix Aviation Corp.,* 172 F.Supp. 480 (D.C.Ill.1958); *Pierce v. Alleluia Cushion Co., Inc.,* 397 F.Supp. 338 (D.C.Miss.1975); *McMahon v. General Motors, Inc.,* 308 F.Supp. 302 (D.C.Pa.1969); *Ammon v. Kaplow,* 468 F.Supp. 1304 (1979).  Although

the presumption in favor of the plaintiff's choice is weaker when he is not a resident of the forum state, his choice is still entitled to considerable weight. *Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174 (S.D.N.Y.1987). Further, even where the plaintiff is not a resident, in accordance with Section 1404(a) "the plaintiff's selected forum is presumptively correct and accordingly, the court affords deference to the plaintiff's selection" *See Holmes v. Freightliner, LLC.,* 237 F.Supp.2d 690, 693 (M.D.La.2002). "Residence in the filing district is not the sole consideration in determining the proper weight to afford the plaintiff's choice. Courts also afford substantial weight to the plaintiff's chosen forum when that forum is connected with the subject matter of the lawsuit." *Id.* (citations omitted). By the same token, on a motion to transfer venue domicile or place of incorporation of a corporate defendant are entitled to "little weight." *Grey v. Continental Marketing Associates, Inc.,* 315 F.Supp. 826, 831 (D.C.Ga. 1970).

The plaintiff was not engaged in forum shopping in choosing this Court as a forum for adjudication of his claims. He resided in Massachusetts until very shortly before the case was brought; he was a resident of the Commonwealth for over eight of the 11 years of his contract with the defendant; all of the pertinent communications were directed to him in Massachusetts; and, finally, the breach of contract occurred within the forum State. The defendant has ample presence within the Commonwealth. It conducts training and promotional sessions, regularly solicits and conducts business through its subsidiaries and affiliates, files and pays taxes, derives millions of dollars in revenue, recruits tens of thousands of persons, and has at least three thousand (3,000) people in Massachusetts currently working for it under contracts similar to the plaintiff's.

6

Certainly, issues presented in this suit have serious ramifications for all the residents of the Commonwealth involved in the defendant's trade.

In these circumstances, Massachusetts is by no means a surprising choice. Further, Massachusetts allows the plaintiff little advantage over the defendant's place of incorporation, the State of Nevada, in terms of the applicable choice of law (a similar statute of limitations, six years). Massachusetts has a significant interest in having this matter resolved within its jurisdiction. The defendant will suffer no inconvenience whatsoever in having the case determined here. As stated already, the defendant is omnipresent within the State. It has chosen consciously to avail itself of the benefits of the forum in planting the seeds of its marketing efforts here through presentations, and in harvesting the crop of its investments in thousands of recruited distributors and in millions of dollars in annual revenue. The defendant's employees travel globally on a regular basis. The defendant has shown no palpable prejudice as a result of having to defend the case here.

Again, as a matter of law, "[a]n implicit requirement for the successful assertion of the defense of forum non conveniens is the necessity of a trial in a more appropriate forum because of the existence of an actionable claim and a meritorious defense thereto." *Leasecomm Corp. v. Rivera,* 1994 Mass.App.Div 115 (1994). The courts note that venue is appropriate in the forum which has a material connection to the operative facts of the case. *See e.g. Goodman v. Schmalz,* 80 F.R.D. 296 (D.C.N.Y.1978). To date, the defendant has not identified *any* substantive defense to the underlying action, aside from a bland assertion that it had retained some type of discretion under the terms of the contract with respect to payments on account of "diverted" distributors. *See* Plaintiff's

7

Response, ¶30. There are only two questions to be answered in this action: has the defendant breached its contract with the plaintiff by failing to pay him commissions with respect to sales by sub-distributors whom the defendants admit were at all relevant times members of the plaintiff's sales organization; and, if it is in breach, what are the plaintiff's damages. The first issue involves the interpretation of a contract which, although it appears to consist of several different parts, is in writing. Little if any testimony would appear necessary to resolve the question. The second issue is a matter of simple accountancy, easily determinable from the defendant's abundant electronic records.

All of the contract documents and the pertinent correspondence between the parties reflecting their course of dealings on the subject have been produced by the defendant and are available within the forum state. The question of liability is one for the Court to decide and will be presented by the plaintiff for adjudication on a motion for summary judgment.

The question of the amounts owed is answered as easily. All of the information required is within the defendant's computer system and is available at the touch of a button. As part of its document production, the defendant produced charts and tables reflecting *all* of the information necessary to compute the amounts owed. Even if this task were somehow more difficult, as a matter of law, computation of damages to mathematical precision is never a condition precedent to recovery. Most certainly, transfer of the action to California will not aid the defendant in this task.

The defendant has again made the same arguments about the plaintiff's counsel suiting their own convenience while disrupting the "daily routines" of the defendant's

8

personnel that it urged unsuccessfully in pursuit of its motion for a protective order (denied by the Court without hearing).[1]  These arguments must, again, be rejected.  The defendant is continuously engaged in business within the State.  It is registered to conduct business, has designated an agent for service of process, has listed its employees as contacts,  markets and sells its products, conducts extensive presentations, pays taxes, etc., etc.  Its employees travel extensively all over the world on corporate business.  In such circumstances, the presumption is that the defendant's employees are a readily accessible source of proof and that their attendance and testimony can be secured by the defendant without undue burden, even if they are required to travel to jurisdictions where the defendant is engaged in business. *See, e.g., Wheeling Corrugating Co. v. Universal Const. Co., Inc.*, 571 F.Supp. 487, 489 (D.C.Ga.1983).

Further, the convenience of the witnesses is taken into account only where the persons claimed to be inconvenienced or inaccessible "are key witnesses and their testimony cannot be effectively presented by depositions. (In order to show this the movant must list names and addresses of witnesses and the nature of their testimony, the necessity of their testimony to his case, and why he cannot properly present his case by using their depositions)". *Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826, 831(D.C.Ga. 1970).  The defendant has made no such showing here.  Moreover, the

---

[1]  After the denial of the motion for a protective order, defendant's counsel attributed the necessity of seeking such protection to the fear of flying of one of the defendant's 30(b)(6) designees, the witness Fisher.  At Fisher's deposition, *taken in Los Angeles to accommodate the defendant*, it became apparent that Fisher was not an appropriate 30(b)(6) designee and will never be a substantive witness in this action, but that her superior, Carol Hanna, who made the decision to deny the plaintiff compensation for his lost commissions and has other direct knowledge of relevant issues, and would be a far more appropriate witness, happily travels all over the world on the company's business. *See* Plaintiff's Response, ¶27-28.

significant factor is "not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issues of the case." *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 928 (.C.Mo.,1985), citing *.Midwest Precision Services v. PTM Industries,* 574 F.Supp. 657, 659 (N.D.Ill.1983); *Vaughn v. American Basketball Association,* 419 F.Supp. 1274, 1276-77 (S.D.N.Y.1976). "As a result, it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail." *Id.,* citing *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 263 (W.D.Mo.1980); *American Can Co. v. Crown Cork & Seal Co., Inc.,* 433 F.Supp. 333, 338 (E.D.Wis.1977).

The defendant, again, makes no such showing. It has identified "potential witnesses" in Russia, Israel, Canada and California and states in a broad fashion that "it would be inconvenient for the party witnesses ... to travel to Massachusetts.[2]" *See* Defendant's Memorandum in Support of Its Motion to Transfer Venue, pp. 4-7; 16-17. None of these witnesses has any *material* information relevant to the case. The "diverted distributors" do not constitute a "source of proof" with respect to any *material* information pertinent to the case. The defendant has admitted on many occasions, and most recently during the deposition of one of its Rule 30(b)(6) designees in this case, that the claimed distributors listed in the defendant's operative letter of February 9, 1999, in fact belonged to the plaintiff. *See* Plaintiff's Response, ¶20, 27-29, 30. This fact remains

---

[2] Curiously, it is convenient for these same witnesses to travel both nation-wide and to foreign countries (*See* Plaintiff's Response, ¶27-28) on the defendant's business, but travel to the Commonwealth of Massachusetts presents an insurmountable obstacle.

uncontested. All of the records of these distributors' activity and volume exist within the defendant's computer system and are readily available. *See* Bespalko Aff., Ex. F; Plaintiff's Response, ¶30.

The defendant's assertion that "no documents relevant to Phase II discovery are *maintained* in Massachusetts", (Def's Memorandum in Supp. of Motion to Transfer, p. 16 (emphasis supplied)), is immaterial. The defendant does not deny that almost all of the relevant documents *are already in Massachusetts* as they have been provided by the defendant during Phase I discovery. As a matter of law, the fact that records have to be transported is irrelevant, absent a specific showing of a serious financial or practical burden (e.g., a specific showing that the documents are "particularly bulky or difficult to transport"), "since any such documents can easily be photocopied and transported from their place of storage." *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 928 (.C.Mo.,1985) (and cases cited); *Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978 (D.C.N.Y.1985). The location of books and records *per se* is simply *not* a factor. *See Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392 (S.D.Tex.1992); *Hartford Acc. & Indem. Co. v. Dalgarno Transp., Inc.*, 618 F.Supp. 1450 (D.C.Miss.1985); *Lehn & Fink Products Corp. v. Milner Products Co.*, 117 F.Supp. 320 (D.C.N.Y.1953). No such showing has been or can be made.

In the end, the defendant has made no showing to sustain its motion for a change of venue. It is not entitled to transfer the action as a matter of law and, as a factual matter, the transfer will not aid speedy and efficient disposition of the present case. The present motion is baseless and should be denied.

11

**3.      Conclusion**

For the reasons stated, the defendant's motion should be denied.

By his attorneys,

Joel Z. Eigerman, BBO No. 152000
Pavel Bespalko, BBO No. 654315
50 Congress Street, Suite 200
Boston, MA 02109
617 367 0014

June 7, 2004

**CERTIFICATE OF SERVICE**

I, Pavel Bespalko, hereby certify that I served the foregoing document upon the defendant by mailing the same via first-class mail, postage pre-paid, to its counsel Annapoorni Sankaran, Esq. of Greenberg & Traurig, at One International Place, Boston, MA 02110 this 7th day of June, 2004.

Pavel Bespalko

12