UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EVGENY OKMYANSKY,
    Plaintiff,

v.

HERBALIFE INTERNATIONAL OF
AMERICA, INC.,
    Defendant.

Civil Action No. 03-10574-JLT

### DECLARATION OF JACKIE FISHER PURSUANT TO FED. R. CIV. P. 56(f)

I, Jackie Fisher, hereby depose under oath and state as follows:

1. I am over eighteen (18) years of age. I am the Vice President of Distributor Policy Administration for Herbalife International of America, Inc. ("Herbalife"), and I have been employed by Herbalife since December 1983. I submit this Declaration in support of the Opposition of Herbalife International Inc., to Plaintiff's Motion for Summary Judgment On Issues Set Forth In The June 21, 2004 Order. I have personal knowledge of certain facts contained herein and with respect to others, I have consulted employees of Herbalife.

2. In order to become an Herbalife distributor, a person (i) purchases from an Herbalife distributor a "distributor kit" which informs the new distributor about Herbalife's products, Herbalife's commission and bonus system for distributors, and the rules of conduct that Herbalife's distributors are required to observe and (ii) submits a Distributorship Application to Herbalife.

3. An individual becomes an Herbalife distributor by joining under an existing distributor ("Sponsor"). The Sponsor and all the distributors above the Sponsor become the new distributor's "upline." The new distributor, and those distributors he sponsors become a part of

the "downline."

4. A potential distributor receives the Distributorship Application from his or her sponsor. Once a person purchases a distributor kit and the Distributorship Application is accepted by Herbalife, the independent distributor may buy Herbalife products at various discounted levels, may sell Herbalife products at retail price to earn profit, and may recruit additional independent distributors. A distributor may become a supervisor by ordering a certain volume of Herbalife products for resale during a specified time period. Supervisors may also earn a Royalty Override based on the monthly volume purchase by three levels of downline supervisors. Supervisors who reach certain production levels are also eligible to sign a Tab Team Bonus Application ("TAB Team Agreement") whereby they can earn an additional production bonus based on sales of their downline organization.

5. The Distributorship Application provides, *inter alia*, that the distributor "declares, certifies and commits to Herbalife" "to follow all the laws, policies and rules of Herbalife" and a "current Distributor Guide of Herbalife . . . is enclosed" with the Distributor Application and "it applies to the sides [(the parties)] of this agreement." Herbalife has established and maintains Rules of Conduct and Distributor Policies ("**Rules of Conduct**") which set forth various rules, policies and procedures which govern the relationship between Herbalife and its distributors. Pursuant to Rules of Conduct, Herbalife distributors may have only one Herbalife distributorship under one Sponsor and are prohibited from dual distributorships.

6. When Herbalife discovers that an individual distributor is operating a dual distributorship, Herbalife conducts an investigation pursuant to the Rules of Conduct and determines the remedy and/or sanction which is appropriate on a case by case basis. In some instances, Herbalife determines that the dual distributors and their lineage should be transferred

back to the original sponsor ("Lineage Transfer"). In some cases where Herbalife determines there should be a Lineage Transfer, it also evaluates on a case by base basis whether there should be any monetary adjustment for the original or second distributorships. In some cases, even where Herbalife has decided to make a Lineage Transfer, Herbalife determines that no monetary adjustment should be made.

7. In assessing whether a monetary adjustment could be made, Herbalife first determines whether the upline of the dual distributor in the second distributorship ("Second Upline Lineage") is still active. Herbalife may attempt to withhold each month, if possible, a portion of the earnings of the Second Upline Lineage until the amount attributable to the dual distributors can be recovered. Generally, it is only after Herbalife has collected sums from the Second Upline Lineage that Herbalife can make any payments the original sponsor could have earned. If however, the Second Upline Lineage is no longer active as Herbalife distributors, Herbalife will generally not be able to collect money attributable to the dual distributorship and no monetary adjustment can be made in favor of the original sponsor. Under the terms of the Rules of Conduct, Herbalife reserves sole and absolute discretion to determine whether and to what extent a Lineage Transfer and/or monetary adjustments will be made when resolving a complaint of a dual distributorship.

8. For example, Okmyansky claimed that Svetlana Mirgozodskaya (File No. RSDD000117) signed a second Distributorship Application under a second sponsor. By the time that Okmyansky made his claim, and Herbalife completed its investigation, the Second Upline Lineage was no longer actively involved with Herbalife. Therefore Herbalife could not withhold any earnings, because there were none, and, consequently, could not redirect amounts to Okmyansky. Herbalife determined that the claim was "uncollectible in regard to the monetary

adjustments, due to the inactivity of the original upline." <u>See</u> Exhibit 1 to my Declaration dated July 9, 2004.

9. The alleged commissions and royalties which are the subject of Okmaynsky's complaints are not being held by Herbalife. Rather, those sums have been paid to other distributors.

10. In resolving a complaint of a dual distributorship, if it is determined that there is to be both a Lineage Transfer as well as a monetary adjustment, the Royalty Override Department at Herbalife is required to recalculate the volume and any possible commissions, royalties or production bonuses due to the original sponsor. Although Herbalife maintains information in its computer records concerning volume ordered by each particular distributor, this recalculation can only be done <u>manually</u>. It requires that Herbalife review the activity of the distributors engaged in dual distributorships attributed to the second lineage and ascertain the precise volume ordered by them. Then Herbalife transfers this volume to the original sponsor and calculates whether that would have qualified the original sponsor for any additional royalties, commissions or production bonuses. This process cannot be done by computer alone as Herbalife's computer systems are not configured to perform these functions automatically. It requires the Royalty Override Department to perform these calculations manually. The web site www.myherbalife.com does not perform these calculations, but merely provides data regarding volume of product purchased by Herbalife distributors. The documents attached as Exhibit D to the <u>Affidavit of Pavel Bespalko</u>, although based in part on information maintained in Herbalife computer systems, were generated by manual computation.

11. With respect to the claims made by Okmyansky, before Herbalife can perform any calculation to determine whether he would be entitled to any additional commissions,

royalties or production bonuses based on purported volume earned by the dual distributors, Herbalife would need additional information.

(a) First, as I explained during my deposition on April 15, 2004, many of the distributors which are the subject of Okmyansky's complaints were operating in Russia during the relevant time period. At that time, there was no Herbalife entity selling product in Russia. We have learned that during that time period, there may have been manipulation going on with orders in Russia. For example, sometimes orders may have been placed in the name of the incorrect individual. Herbalife would need to determine whether orders were correctly placed by the subject dual distributors and their respective organizations during the relevant time period in order to calculate any possible additional commission, royalties or production bonuses to which Okmyansky may be entitled. Herbalife would need to obtain this information from, the subject dual distributors and possibly their organizations as this information is not contained in the files maintained by Herbalife.

(b) In addition, Herbalife would also need to know whether the volume earned by the dual distributors while working under the second lineage would have been earned if they were working under Okmyansky. For example, it could be the case that a particular dual distributor did not want to continue to work under Okmyansky's downline and attempted to participate in the downline of another. This information would help Herbalife determine whether the volume earned under the second lineage could have been earned had the dual distributorship never existed. Herbalife could then determine whether the volume earned by the subject dual

distributors and their lineage should be transferred to Okmyansky in full, in part or not at all. Herbalife would need to obtain this information from the subject dual distributors as this information is not contained in the files maintained by Herbalife.

(c) Moreover, Herbalife would also need to determine whether it can collect any of the commissions, royalties and/or production bonuses paid to the Second Upline Lineage before it can reallocate any portion thereof to Okmyansky. As explained above, Herbalife generally does not make monetary adjustments to distributors unless it recovers money attributable to a dual distributorship from the Second Upline Lineage. For those distributors in the Second Upline Lineage of the dual distributors who are the subject of Okmyansky's complaint who are no longer active with Herbalife, Herbalife will have to determine whether the Second Upline Lineage are willing to disgorge those amounts attributable to the volume earned by the dual distributors during the relevant time period.

12. If it is determined that Okmaynsky's contract with Herbalife is ambiguous, Herbalife will need to examine its former employees as well as Okmyansky about their communications concerning the contract.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 23rd DAY OF JULY 2004.**

Jackie Fisher